UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BANKWELL BANK<br><br>*Plaintiff*,<br><br>v.<br><br>GARDNER AGENCY OF TEXAS, LLC and STEVEN C. GARDNER,<br><br>*Defendant*. | No. 3:23-cv-00303 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Bankwell Bank ("Bankwell") brings this breach of contract action against Gardner Agency of Texas, LLC ("Gardner Agency") and Steven C. Gardner. As relevant here, Bankwell alleges that Gardner Agency breached two notes (Counts 1 and 2), and Gardner breached the guaranties he executed to secure Gardner Agency's obligations to Bankwell under the notes (Counts 3 and 4). Bankwell moves for summary judgment as to liability on its breach of guaranty claims against Gardner. For the reasons described below, Bankwell's motion for summary judgment, as orally amended in the most recent status conference, is granted.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the parties' Local Rule 56(a) Statements and exhibits.[1] All facts are undisputed unless otherwise indicated.

---

[1] Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local Rule 56(a)2 Statement[ ] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." This Court is "under no 'obligation . . . to perform an independent review of the record to find proof of a factual dispute' if the non-moving party fails to designate specific facts showing a genuine dispute of material fact." *Chalco v. Belair*, 738 F. App'x 705, 709 (2d

### A. Bankwell's Loan

On March 29, 2019, Gardner Agency entered into two United States Small Business Administration Loans (the "SBA Loans") with Bankwell. ECF No. 24-3 ¶ 6 (affidavit of Gardner admitting that Gartner Agency "obtained two [SBA Loans]"); ECF No. 17 ¶ 2 (Gardner's answer admitting that Gardner Agency "entered into two loans" with Bankwell). As security for the loans, Gardner Agency executed two notes in the amounts of $1,248,000 and $1,152,000 (the "Notes"). ECF No. 24-2 ¶¶ 3, 8. The Notes both require that Gardner Agency make "monthly principal and interest payments subject to a fluctuating interest rate." *Id.* ¶¶ 4, 9. If "Gardner Agency fails to make a payment when due," it is in default, and Bankwell has the right to "'require immediate payment of all amounts owing under [the Notes]." *Id.* ¶¶ 4-5, 9.

Steven C. Gardner is the "managing member" of Gardner Agency and is "involved in its operation and day-to-day management." ECF No. 24-4 ¶ 1; ECF No. 24-3 ¶ 2. Gardner executed two guaranties (the "Guaranties"), in which he "unconditionally guarantee[d] payment to Bankwell of all amounts due and owing under the Note[s]." ECF No. 24-2 ¶¶ 6, 10. The Guaranties "remain[] in effect until the Note[s] are paid in full[]," and they require Gardner to "pay all amounts due under the Note[s]" upon receiving a written demand from Bankwell, regardless of whether Bankwell has first sought payment from any other source. *Id.* ¶¶ 7, 11. Gardner claims that the Guaranties are not enforceable, because "Bankwell failed to follow the Small Business Administration protocol and procedures to appropriately underwrite the loans," ECF No. 24-3 ¶ 9, but he provides no details of these alleged failures.

---

Cir. 2018) (summary order) (citations omitted); *accord Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (Court not required conduct "an exhaustive search of the entire record before ruling on a motion for summary judgment").

### B. The Alleged Default

Bankwell claims that Gardner Agency defaulted on the Notes by failing to make required monthly interest and principal payments. ECF No. 20-8 ¶¶ 12-14; *see also* ECF No. 20-1 ¶¶ 15-16. In his answer to the complaint, Gardner admitted that "[i]n August 2022, Gardner Agency defaulted on the loans," ECF No. 1 ¶ 2; ECF No. 17 ¶ 3, and he also admitted that Gardner Agency failed to make certain payments of principal and interest in September and October 2022, ECF No. 1 ¶¶ 34-35, ECF No. 17 ¶ 25. But Gardner's affidavit states that Gardner Agency "made full interest and principal balance payments," ECF No. 24-3 ¶ 8, although he does not specify the period during which Gardner Agency made such payments. He also maintains in his affidavit that,

> Gardner Agency and I did not default on either Note . . . . For several months, I worked with a "work out" team at Bankwell to negotiate a non-forbearance agreement that would allow Gardner Agency to continue to make payments on the Notes. After months of negotiating in good faith with the intention of paying Bankwell under the Notes, it seemed to me that Bankwell terminated its entire "work out team" that was negotiating with me on the terms of the non-forbearance agreement. Once it became clear that the work out team could no longer offer Gardner Agency and me any type of accommodation, Bankwell instituted this suit. At all times throughout my communication with the work-out team, I intended on fulfilling Gardner Agency's obligation to Bankwell.

*Id.* ¶ 7.

On October 28, 2022, Bankwell sent Gardner Agency and Gardner two Notices of Default and Acceleration of Loan. ECF No. 24-2 ¶ 16. The Notices stated that Gardner Agency was in default of the Notes and demanded "immediate payment of all amounts owing under [the Notes]." ECF No. 20-6 at 2-6; ECF No. 24-2 ¶ 16.

Bankwell claims that despite this demand, Gardner has "failed and/or refused to pay Bankwell the amounts due and ow[]ing under the Notes." ECF No. 24-2 ¶ 18; ECF No. 20-1 ¶ 20 (Kornberg declaration). Gardner denies this allegation, pointing to his statement in his affidavit that he attempted to work with Bankwell to negotiate a non-forbearance agreement. ECF No. 24-

3

2 ¶ 18; ECF No. 24-3 ¶ 7. The parties also disagree about the amount Bankwell is owed under the Notes. ECF No. 24-2 ¶ 17; ECF No. 20-1 ¶ 19 (declaration of Bankwell First Vice President Susan Kornberg, stating that the total owed was $1,839,704.73 as of July 13, 2023); ECF No. 24-3 ¶ 10 (Gardner affidavit: "I am not aware of how much is owed on each Note, but I deny that Bankwell's calculations are correct because Bankwell is not properly considering all payment made this year"). [2]

C. **Procedural History**

On March 6, 2023, Bankwell commenced this action, alleging that Gardner Agency breached the Notes and the security agreements associated with the notes (Counts 1, 2, 5, and 6), and that Gardner breached the Guaranties (Counts 3 and 4). ECF No. 1.

On March 13, 2023, Gardner Agency filed for Chapter 11 Bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Case"). *See* Voluntary Petition for Chapter 11 Bankruptcy, *In re: Gardner Agency of Texas, LLC*, No. 23-30883 (Bankr. S.D. Tex., March 13, 2023) (ECF No. 1).[3]

Now, Bankwell moves for partial summary judgment in this case on Counts 3 and 4 of the complaint, which allege that Gardner is in breach of the Guaranties. ECF No. 20. Bankwell's initial

---

[2] Under Fed. R. Evid. 201, I also take judicial notice of filings in Gardner Agency's Chapter 11 bankruptcy case. *See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 220 F. Supp. 2d 289, 293 n.4 (S.D.N.Y. 2002). In a recent filing in that case, Gardner Agency stated that "[a]t the [time of the] bankruptcy filing, Bankwell was owed $1,874,432.47," but, as of February 29, 2024, Gardner Agency had "paid $1,815,613.59 to Bankwell." Debtor's Response to Motion to Dismiss ¶¶ 5, 7, *In re: Gardner Agency of Texas, LLC*, No. 23-30883 (Bankr. S.D. Tex., February 29, 2024) (ECF No. 183). According to another one of Gardner Agency's filings, it made the bulk of its payments to Bankwell on November 14, 2023, after the briefing of Bankwell's motion for summary judgment was complete. Second Amended Debtor in Possession's Chapter 11 Liquidating Plan of Reorganization at 2, *In re: Gardner Agency of Texas*, No. 23-30883 (ECF No. 181).

[3] In the Bankruptcy Case, Gardner Agency has filed a Second Amended Plan of Reorganization, which Bankwell objects to. *In re: Gardner Agency of Texas*, No. 23-30883 (ECF Nos. 181, 184). The Subchapter V Trustee has also filed a motion to dismiss or convert the case. *Id.* (ECF No. 179). The Bankruptcy Court has scheduled a hearing on the Second Amended Plan of Reorganization and the Trustee's motion for March 29, 2024. *Id.* (ECF No. 187). I directed the parties to file another status report regarding the bankruptcy proceedings on or by March 30, 2024. ECF No. 34.

motion asked that the Court enter judgment in the amount of $1,839,704.73 plus $464.19 from July 14, 2023 until judgment is entered. *Id.* Subsequently, during a status conference, Bankwell "orally amended its motion for summary judgment to seek summary judgment as to liability only," leaving the question of damages for trial. ECF No. 34.

### III.  LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotation marks omitted). "Pro se litigants receive special solicitude when confronted with motions for summary judgment. [Courts] liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to

raise the strongest arguments they suggest." *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) (internal citations and quotation marks omitted).

## IV. DISCUSSION

Bankwell's motion, as amended during the February 29, 2024 status conference, seeks summary judgment as to Gardner's liability under Counts 3 and 4 of the Complaint, which allege that Gardner breached the Guaranties. *See* ECF Nos. 20, 34.

"In Connecticut, a guarantee is a promise to answer for the debt, default or miscarriage of another . . . . It is simply a species of contract." *A.T. Clayton & Co. v. Hachenberger*, 920 F. Supp. 2d 258, 263 (D. Conn. 2013) (internal quotation marks omitted). "The elements of a prima facie claim for a breach of a written guaranty are the same as those required to assert a claim of breach of contract . . . . the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages*." BMO Harris Bank N.A. v. P B & J Logistics Inc.*, No. 3:18-CV-00221 (MPS), 2020 WL 1532278, at *3 (D. Conn. Mar. 31, 2020) (internal citations and quotation marks omitted).

There is no genuine dispute of material fact as to whether Bankwell has met any of these requirements. As to formation of an agreement, Gardner does not dispute that he executed the Guaranties. ECF No. 24-2 ¶¶ 6, 10. In his affidavit, he asserts that he "do[es] not believe that the [Guaranties] [are] enforceable," because "[a]fter closing both loans, [he] discovered that Bankwell failed to follow the Small Business Administration protocol and procedures to appropriately underwrite the loans." ECF No. 24-3 ¶ 9. But Gardner provides no factual support for this statement, and "[a] generalized and conclusory affidavit, standing alone, is insufficient to defeat a motion for summary judgment." *Sekor v. Capwell*, 1 F. Supp. 2d 140, 146 (D. Conn. 1998); *see Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) ("To satisfy [Rule 56], affidavits must

6

be based upon concrete particulars, not conclusory allegations." (internal citations and quotation marks omitted)). Nor has he pointed to any authority or even suggested that any failure to follow Small Business Administration "protocol and procedures" would make the Guaranties unenforceable. Similarly, Gardner denies that Bankwell "fully performed its obligations" under the Notes, ECF No. 24-2 ¶ 15; but again, the only evidence he cites is his unsupported statement that Bankwell violated Small Business Administration protocols, ECF No. 24-3 ¶ 9. So the evidence in the summary judgment record does not raise a genuine dispute of material fact as to whether the parties formed an enforceable agreement or whether Bankwell performed under that agreement.

Nor could any reasonable jury deny, based on the evidence in the record, that Gardner breached the Guaranties and that the breach resulted in damages to Bankwell. In his answer, Gardner admitted that Gardner Agency defaulted on the loans in August of 2022 and failed to make certain payments of principal and interest in September and October 2022. ECF No. 1 ¶¶ 2, 34-35; ECF No. 17 ¶¶ 3, 25. Under the Notes, failure to make payments constitutes a default. ECF No. 24-2 ¶¶ 4; 9. Gardner offers a conclusory denial that Gardner Agency defaulted on the Notes in his Local Rule 56(a)2 statement and affidavit. *Id.* ¶ 12; ECF No. 24-3 ¶ 7. But the averment in his affidavit supporting this denial simply states that Gardner "worked with a 'work out' team at Bankwell to negotiate a non-forbearance agreement that would allow Gardner Agency to continue to make payments on the notes" and that the negotiations ultimately did not yield "any type of accommodation." ECF No. 24-3 ¶ 7. These statements do not contradict the fact that Gardner Agency failed to make payments when due, i.e., that it defaulted. In any event, "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation." *Gibbs* ex rel. *Estate of Gibbs v. Cigna Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).

7

In the event of a default, the Notes give Bankwell the right to "[r]equire immediate payment of all amounts owing under [the Notes]," and "[c]ollect all amounts owing from any Borrower or Guarantor." ECF Nos. 20-2 ¶¶ 5(A)-(B), 20-4 ¶¶ 5(A)-(B); ECF No. 24-2 ¶¶ 4-5, 9. Gardner admits that Bankwell exercised this right on October 28, 2022 by sending Notices of Default and Acceleration of Loan to Gardner and Gardner Agency. ECF No. 24-2 ¶ 16. Upon receiving these written demands from Bankwell, the Guaranties required Gardner to "pay all amounts due under the Note." ECF No. 24-2 ¶¶ 7, 11; ECF Nos. 20-3 ¶ 1, 20-5 ¶ 1. s

Bankwell claims that Gardner breached the Guaranties by "fail[ing] and/or refus[ing] to pay Bankwell the amounts due and owing under the Notes." ECF No. 24-2 ¶ 18; ECF No. 20-1 ¶ 20. Gardner denies this, ECF No. 24-2 ¶ 18, but he again points only to the portion of his affidavit describing the unsuccessful workout negotiations with Bankwell and stating that "[a]t all times throughout [his] communication with the work-out team, [he] intended on fulfilling Gardner Agency's obligation to Bankwell," ECF No. 24-3 ¶ 7. Again, Gardner's claim that he "intended" to comply with his contracts with Bankwell and made unsuccessful efforts to negotiate an agreement does not contradict Bankwell's claim that he breached the Guaranties. If anything, the fact Gardner needed to communicate with Bankwell's "work out" team at all is evidence that Gardner Agency was not paying the amounts due under the Notes. And Gardner Agency's recent filings in the Bankruptcy Case likewise indicate that Bankwell has not received the entire amount due and owing under the Notes. *See* discussion *supra* note 3. Thus, the uncontradicted evidence in the record and facts of which the Court may take judicial notice demonstrate that Gardner breached his obligation under the Guaranties, and Bankwell incurred damages because of that breach.

Gardner argues that there is a genuine dispute of material fact as to whether Bankwell "suffered damages" because of the "likelihood that Gardner Agency will fully satisfy its

obligations to Bankwell through the approval of its reorganization plan." ECF No. 24-1 at 3. But the mere possibility that Gardner Agency may repay Bankwell at some future point does not create a genuine issue of material fact. Based on the summary judgment record, no reasonable jury could deny that Bankwell has suffered damages. And as noted, Bankwell is no longer seeking summary judgment as to the amount of damages. So Gardner will still have an opportunity to demonstrate, during trial, the extent to which Gardner Agency has repaid Bankwell.

Gardner also argues that I should delay ruling on Bankwell's motion for summary judgment "for at least 90 days," to give Gardner Agency an opportunity to "satisfy all its obligations to Bankwell." ECF No. 24-1 at 5. Though the initial 90 days have long passed, Gardner again requested that I delay ruling on the motion for summary judgment in the most recent status conference. I find that the pending Bankruptcy Case does not warrant a delay in deciding the summary judgment motion.

When a debtor files for bankruptcy, a creditor's lawsuit against "defaulting non-bankrupt co-defendants" is "not automatically stayed." *E. Sav. Bank, FSB v. St. Germain*, No. 3:13-CV-01816 (CSH), 2014 WL 3687740, at *2 (D. Conn. July 22, 2014) (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003)). Instead, courts will generally permit the lawsuit against the non-bankrupt co-defendant to proceed, except in "limited and unusual circumstances . . . e.g., 'when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.'" *Id.* at *3 (quoting *Queenie*, 321 F.3d at 287); *see also Krondes v. O'Boy*, 69 Conn. App. 802, 809 (2002) ("Generally, the filing of a bankruptcy petition does not stay actions against nondebtors."). Gardner has not shown that this case involves any "unusual circumstances" such that permitting Bankwell's claim to proceed will have an "immediate, adverse economic impact" on Gardner Agency. *See In re Durr Mech. Constr., Inc.*, 604 B.R. 131, 136 (Bankr.

9

S.D.N.Y. 2019) (noting that *Queenie* "provided three specific examples that would warrant an extension of the stay [to non-bankrupt co-defendants]: (1) a claim to establish an obligation as to which the debtor is a guarantor; (2) a claim against the debtor's insurer; and (3) actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant" (internal citations and quotation marks omitted)).

Since a stay is not appropriate for Bankwell's claims against Gardner, I also find that there is no reason to delay deciding the motion for summary judgment in the hope that Bankwell will recover from Gardner Agency in the Bankruptcy Case. The Guaranties do not require Bankwell to "seek payment from [Gardner Agency] . . . before demanding payment from [Gardner]." ECF Nos. 20-3 ¶ 8(C)(12), 20-5 ¶ 8(C)(12).[4] Nor would final resolution of the Bankruptcy Case necessarily resolve this matter. "As a general principle, a debtor's discharge of liability in bankruptcy proceedings does not affect a creditor's ability to pursue collection from a guarantor." *In re Alpha Entm't LLC*, No. AP 3:23-CV-00118 (VAB), 2023 WL 4157346, at *7 (D. Conn. June 23, 2023). This principle holds true for the Guaranties here, which provide that Gardner waives any defense based on a claim Gardner Agency "has avoided liability on the Note[s]." ECF Nos. 20-3 ¶ 6(C)(15), 20-5 ¶ 6(C)(15). So even if the Bankruptcy Case is resolved and Gardner Agency is discharged, Gardner is still liable for any remaining amounts due under the Notes.

In some circumstances, a court may conserve judicial resources by delaying decision on a pending motion when the case is likely to be mooted in the near future by, e.g., full payment of a debtor through a bankruptcy proceeding. But in this case, Gardner has been asserting that

---

[4] Of course, Bankwell "is not entitled to a 'double recovery'" from both Gardner and Gardner Agency, as Bankwell acknowledges. ECF No. 25 at 6. "[T]o the extent Bankwell receives proceeds from the bankruptcy proceeding after entry of judgment against Gardner, such proceeds would constitute a partial or, if applicable, total satisfaction of judgment." *Id.*

10

resolution of the Bankruptcy Case is "imminent" since he filed his opposition to Bankwell's motion for summary judgment on August 8, 2023, ECF No. 24-1 at 3, and the Bankruptcy Case is still ongoing. A review of the docket reveals that Bankwell and the Subchapter V Trustee object to aspects of Gardner Agency's latest reorganization plan, and the Subchapter V trustee has moved to dismiss or convert the case. *See* discussion *supra* note 4. And as noted, the resolution of the Bankruptcy Case may not result in full payment of Bankwell. Thus, I find that delaying decision on Bankwell's motion for summary judgment would serve little value.

## V.   CONCLUSION

For the reasons explained above, I grant Bankwell's motion for summary judgment, ECF No. 20, as amended during the February 29, 2024 status conference, ECF No. 34. I find that Gardner is liable under Counts 3 and 4 of the complaint, which allege breach of the Guaranties.

On March 31, 2023, this Court directed Bankwell to show cause why this case should not be stayed and administratively closed pending the resolution of the bankruptcy action. ECF No. 15. In its response to the show cause order, Bankwell argued that its breach of guaranty claims against Gardner could proceed, since Gardner is not a debtor in the Bankruptcy Case. ECF No. 16. As noted above, I find this argument persuasive, and therefore decline to impose a stay on those claims. However, Bankwell does not argue that its claims against Gardner Agency may proceed— nor could it, since "[w]hen a bankruptcy action is filed, any 'action or proceeding against the debtor' is automatically stayed by Section 362(a)." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 76 (2d Cir. 2019). As such, Bankwell's claims against Gardner Agency are hereby stayed.

This case will proceed to trial on the remaining issues that have not been stayed, i.e., on the amount of damages Bankwell may recover for Gardner's breach of the Guaranties.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
March 25, 2024

12